UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

v.

MORIS NOZADZE,

              Defendant.

------------------------------------------------------------X

**MEMORANDUM & ORDER**
23-CR-490 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On February 19, 2025, Moris Nozadze ("Defendant") pled guilty to one count of conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4), which was charged under a six-count Indictment. Plea Agreement ("Plea"), ECF No. 72 at ¶ 1; *see generally* Indictment, ECF No. 1.[1] The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 30 months' imprisonment; 1 year of supervised release with both the standard and special conditions of supervision; and a $100.00 mandatory special assessment.

## I.    Background

*Factual Background*

From approximately January 2021 to November 2023, Defendant operated a business where he manipulated or rolled back vehicle odometer mileage readings in exchange for payment. Sealed Presentence Investigation Report ("PSR"), ECF No. 97 at ¶ 6. Vehicle odometers are instruments used for measuring and recording the distance or mileage driven of a vehicle. *Id.* at ¶ 4. Congress has determined "that . . . buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle"; buyers are "entitled to rely on the

---

[1] Citations are to the docket in *United States v. Nozadze*, 23-CR-490. Pincites refer to the ECF page numbers assigned to a filing, where available, and where no ECF heading is present, to the page numbers listed in the original filing.

odometer as an accurate indication of the mileage of the vehicle," that assists in "deciding on the safety and reliability of the vehicle." 49 U.S.C. § 32701(a).

Defendant manipulated or rolled back odometers with the assistance of his son, co-defendant Daniel Nozadze ("D. Nozadze"), and his neighbor, co-defendant Sergo Simonyan ("Simonyan" and together with Defendant and D. Nozadze, "Defendants"). PSR at ¶ 7. Specifically, Defendants manipulated odometers by one of two (or both) methods: (1) decreasing the mileage already shown on the odometer or (2); installing devices known as "mileage blockers," "mileage stoppers," or "speed filters" (collectively, "Mileage Blocker Devices") to disable odometers and/or reduce the rate at which they accumulated mileage. *See id.* at ¶ 6; Gov't Sent'g Mem., ECF No. 112 at 1. Defendant performed odometer manipulation services in front of his Brooklyn, New York residence, and at various other locations along the eastern U.S. seaboard, including vehicle dealerships. PSR at ¶ 6. D. Nozadze and Simonyan are alleged to have personally rolled back odometers and installed Mileage Blocker Devices. Indictment at ¶ 10. D. Nozadze is also alleged to have communicated with customers and to have arranged times, locations, and prices for odometer manipulation services. *Id.*

Records from Bank of America, Zelle, Block Inc., Venmo, and three undercover transactions indicate Defendants conducted at least 1,159 rollbacks or Mileage Blocker Device installations. PSR at ¶ 8. The Government provided a conservative estimated loss totaling $927,200.00. *Id.* The U.S. Probation Office stated it "does not have specific information with respect to the make and model over the vehicles, or the specific details of the various transaction[s]" involved in Defendants' odometer manipulation business and so it "cannot compute and [sic] independent loss figure in this case." *Id.* at ¶ 8 n.2. Instead, the U.S. Probation Office relied on an estimate prepared by the Government. *Id.* The Government "advised that Courts in

many districts have accepted a loss amount of $4,000 or more per vehicle in odometer fraud cases" and so the Government "attributed a $4,000 value inflation to the each of the 1,159 vehicle transactions involved in the scheme." *Id.* To account for "potential overcounting" and "overestimate[s]," the Government reduced its estimate. *Id.*

*Procedural History*

On November 28, 2023, a U.S. grand jury sitting in the Eastern District of New York returned the six-count Indictment against Defendants, including two counts (Counts 1 and 3) against Defendant Moris Nozadze. Indictment at ¶¶ 13, 17. On December 13, 2023, Homeland Security and Investigations agents arrested Defendant. PSR at ¶ 10. On February 19, 2025, Defendant pled guilty to Count One of the Indictment, charging him with conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32704(4). Plea at ¶ 1. Pursuant to the Plea, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of 36 months' imprisonment or below. *Id.* at ¶ 4. Pursuant to the Plea, the Government agreed that "no further criminal charges will be brought against [Defendant] for, between January 2021 and November 2023, (1) conspiring to commit odometer fraud, as charged in Count One of the Indictment; and (2) installing mileage blocker devices, as charged in Count Three of the Indictment . . ." *Id.* at ¶ 5. Additionally, the Government agreed to move to dismiss the remaining counts of the Indictment as to Defendant at the time of sentencing. *Id.*

On March 21, 2025, and May 9, 2025, D. Nozadze and Simonyan respectively pled guilty to Count One of the Indictment, charging each with conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32704(4). D. Nozadze Plea Agreement, ECF No. 82 at ¶ 1. Simonyan Plea Agreement, ECF No. 89 at ¶ 1. D. Nozadze's sentencing is set for January 29, 2026.

3

Simonyan's sentencing has not been set, but a presentence investigation report was submitted on January 7, 2026. *See* Sealed Simonyan Presentence Investigation Report, ECF No. 113.

## II.   Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines (the "Sentencing Guidelines," or "Guidelines," or "U.S.S.G.") operate as the "starting point and . . . initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a trial court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state—in open court—the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar

4

conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III.  Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1.  *Family and Personal Background*

Defendant was born on September 30, 1970, in Tbilisi, Georgia. PSR at ¶ 36. Defendant was raised by both his parents in a household without abuse. *Id.* at ¶ 38. As an adult, Defendant learned his mother did not initially want to carry her pregnancy with Defendant to term due to financial constraints. *Id.* Defendant and his family resided in a small studio apartment in a low-income neighborhood, although his needs were always met. *Id.* In his childhood, Defendant's father worked as a delivery truck driver and his mother worked as a chef for a daycare. *Id.* at ¶ 36. As defendant grew older, his family's financial situation improved. *Id.* at ¶ 38. After his maternal grandmother passed away, Defendant found himself empathizing with his mother who struggled to grapple with the death of a parent. *Id.* Defendant described himself feeling as though he was "carrying someone else's pain[.]" *Id.* Defendant otherwise described himself as shy, yet had a normal childhood. *Id.*

Defendant resided in Georgia until 1990 when he began dividing his time between Georgia and Russia. *Id.* at ¶ 39. Defendant immigrated to the United States in 1996, settling in New York. *Id.* In April 2025, Defendant moved to Florida and began living with his second ex-wife and two daughters. *Id.* at ¶ 40. Defendant is a permanent resident of the United States. *Id.* at ¶ 39.

5

Defendant has two siblings, one of whom resides in New York the other in Moscow, Russia. *Id.* at ¶ 37. Defendant has a close relationship with his siblings, both of which are aware of the instant case and remain supportive. *Id.* Defendant's mother and father reside in New York, and Defendant shares a close relationship with them. *Id.* at ¶ 36. Defendant's father, now age 89, has not worked since immigrating to the United States in 2002. *Id.* Defendant's mother, now age 88, has also not worked since moving to the United States. *Id.* Both of Defendant's parents suffer from chronic medical conditions: His father uses a hearing aid, has high blood pressure, and is blind in one eye; his mother has had symptoms of dementia for three or four years and requires the aid of a wheelchair. *Id.* Defendant's mother also has a full-time home attendant. *Id.* Defendant indicated his father is aware of the instant case, and remains supportive of Defendant. *Id.*

Defendant has been in two marriages, both of which ended in divorce. *Id.* at ¶¶ 40, 43. Defendant's first marriage occurred in 2001. *Id.* at ¶ 43. Defendant and his first wife share a son from their union. *Id.* Defendant's first wife left him and their son when his son was three or four years old. *Id.* Following his first wife's departure, Defendant filed for divorce in 2003 and has not had contact with her more than 20 years. *Id.* Defendant's son from this first marriage is Daniel Nozadze, a co-defendant in the instant case. *Id.*

Defendant remarried in 2006. *Id.* at ¶ 40. Defendant and his second wife share two daughters, and his second wife had a son from a previous relationship. *Id.* at ¶¶ 40–41. Defendant indicated during the COVID-19 pandemic, he and his second wife experienced challenges in their marriage leading to her decision to move to Florida with their children (their two daughters). *Id.* Defendant's now second divorce was finalized in March 2025. *Id.*

Defendant and his second ex-wife do not communicate directly much despite currently residing together in Florida at the time of the instant case; they mainly communicate through their oldest daughter. *Id.* Defendant and his second ex-wife alternate who sleeps in the bedroom and living room of a one-bedroom and one-bathroom apartment (with their daughters sharing the beds with them). ¶ 44. Defendant's second ex-wife is aware of the instant case but is not emotionally supportive of Defendant. *Id.* at ¶ 40. However, Defendant's second ex-wife has described Defendant as a kind person and good father to their daughters, noting she had nothing negative to say about Defendant. *Id.* at ¶ 42. Defendant's second ex-wife financially supports their family. *Id.*

Defendant generally has a good relationship with his younger daughters and stepson. *Id.* at ¶¶ 40–41. Defendant stated he is heavily involved in his daughters' lives, although neither are aware of the instant case. *Id.* at ¶ 40. Defendant's stepson is aware of the instant case and remains supportive of Defendant. *Id.* at ¶ 41.

Defendant has not had a good relationship with his older son Daniel from his first marriage. *Id.* at ¶ 43.

Defendant states he will probably be deported based on his conviction in this case. *See, e.g.*, Def's Sent'g Mem. at 18. The Court recognizes the possibility of Defendant's deportation.

    2.    <u>Educational and Employment History</u>

Defendant completed the equivalent of an 8th grade education while residing in Georgia. PSR at ¶ 49. He received poor grades, although he did not experience disciplinary actions. *Id.* Defendant attended a technical school for three years in Georgia where he was educated in automobile mechanics. *Id.*

Separately, Defendant served a mandated two-year term in the Soviet Army from 1988 to 1990 as a maintenance worker in a German hospital. *Id.* at ¶ 50.

Between 2012 and 2024, Defendant worked as a car mechanic at numerous shops in New York. *Id.* at ¶ 53. During this time, Defendant engaged in the instant offense. *Id.* Between December 2024 and January 2025, Defendant worked as a companion to individuals with autism spectrum disorder, leaving the individuals due to the uncertain outcome of the instant case. *Id.* at ¶ 52. From 2021 to the present, Defendant indicated he has operated a practice in the field of spiritual healing, where he engages in motivational speaking presentations. *Id.* at ¶ 51. Defendant has otherwise been financially supported by his second ex-wife. *Id.*

### 3. *Prior Convictions*

Defendant does not have any prior juvenile adjudications or adult criminal convictions. *See id.* at ¶¶ 29–31.

### 4. *Physical and Mental Health*

Defendant is healthy and has no history of health issues. *Id.* at ¶46. Similarly, Defendant has no history of mental or emotional health problems nor treatment for such problems. *Id.* at ¶47.

### 5. *Substance Abuse*

Defendant experimented with marijuana on a few occasions in the 1990s, but has not reported further drug use. *Id.* ¶ 48. He has tried alcohol but does not enjoy drinking, and therefore does not consume alcohol on a regular basis. *Id.*

### 6. *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

8

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Defendant, across an extended period of time, engaged in more than 1,100 fraudulent odometer manipulations, causing an estimated $927,200 in losses. *Id.* at ¶ 8. Not only did Defendant's conduct cause financial harm, it also threatened the safety of those who purchased tampered vehicles unaware of their true mileage and threatened other cars on the road. The Court's sentence will deter Defendant and others from engaging in similar conduct, justly punish Defendant for his crimes, and protect the public from Defendant's actions. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4). Plea at ¶ 1.

Defendant faces a maximum term of three years' imprisonment and no minimum term. 49 U.S.C. § 32709(b). Defendant also faces a maximum term of one year of supervised release. 18 U.S.C. §§ 3583(b)(3), 3559(a)(5). If a condition of release is violated, Defendant may be

9

sentenced to up to one year of imprisonment without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(e). Defendant is eligible for a term of probation of one to five years. 18 U.S.C. § 3561(c)(1). Unless extraordinary circumstances exist, the Court must impose one of the following as a condition of probation: a fine, restitution, or period of community service. 18 U.S.C. § 3563(a)(2).

In addition to facing terms of imprisonment and supervised release, Defendant faces a maximum fine of $250,000.00. 18 U.S.C. § 3571(b). Defendant appears unable to pay a fine. PSR at ¶ 61. However, pursuant to the Defendant's Plea, he is to forfeit all right, title, and interest in numerous assets seized by law enforcement. Plea at ¶ 6. The Court is also required to impose a mandatory special assessment of $100.00 pursuant to 18 U.S.C. § 3013(a)(2)(A).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

Defendant pled guilty to one count of conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4). Plea at ¶ 1.

The parties agree as to which Guideline provision applies here. The applicable guideline is U.S.S.G. § 2N3.1, which directs the Court by way of cross reference to U.S.S.G. § 2B1.1—the Guidelines provision for Theft, Property Destruction, and Fraud—when the offense "involved more than one vehicle." U.S.S.G. § 2N3.1(b)(1); *see* Sealed Second Addendum to PSR ("Am. PSR"), ECF No. 114 at ¶ 19; Def's Sent'g Mem. at 6; Gov't Sent'g Mem. at 3. U.S.S.G. § 2X1.1–governing Conspiracies, Attempts, and Solicitations—does not apply to Defendant's sentencing because the conspiracy at issue "is expressly covered by another offense guideline

section." U.S.S.G. § 2X1.1(c). Instead, Defendant has a base Offense Level of 6 per U.S.S.G. § 2B1.1. *See* § 2B1.1(a)(2).

The parties also agree certain adjustments apply to Defendant's base Offense Level. First, U.S.S.G. § 2B1.1(b)(1)(H) adds 14 levels because the total loss stemming from the offense, based on the Government's estimates and Defendant's plea agreement, was greater than $550,000.00 but less than $1,500,000.00. U.S.S.G. § 2B1.1(b)(1)(H); *see* Am. PSR at ¶ 20; Def's Sent'g Mem. at 6; Gov't Sent'g Mem. at 3.

Second, U.S.S.G. § 2B1.1(b)(2)(A)(i) adds 2 levels because the offense involved ten or more victims.[2] U.S.S.G. § 2B1.1(b)(2)(A)(i); *see* Am. PSR at ¶ 20A; Def's Sent'g Mem. at 6; Gov't Sent'g Mem. at 3.

Third, U.S.S.G. § 3B1.1(c) adds 2 levels because Defendant was "an organizer, leader, manager, or supervisor" in criminal activity "other than described in subsection (a) or (b)." U.S.S.G. § 3B1.1(c). See Am. PSR at ¶ 22; Def's Sent'g Mem. at 6; Gov't Sent'g Mem. at 3.

Finally, all parties agree certain reductions apply for Defendant's timely acceptance of responsibility under U.S.S.G. §§ 3E1.1(a)–(b). *See* Am. PSR at ¶¶ 25–26; Def's Sent'g Mem. at 6; Gov't Sent'g Mem. at 3. Namely, 3 levels are subtracted because Defendant demonstrated acceptance of responsibility for his offense and did so in a timely fashion. In sum, Defendant's Offense Level is 21.

---

[2] Initially, the U.S. Probation Office did not include a 2-point enhancement for the number of victims involved. *See generally* PSR, ECF No. 97. After the Government objected in a sealed filing to the failure to add this enhancement, the U.S. Probation Office issued the Sealed Second Addendum to the PSR and agreed that the enhancement applies. *See* Am. PSR, ECF No. 114 at 1, ¶ 20.

Defendant's Criminal History Category is I because he has no history of convictions or sentences. *See* U.S.S.G. § 4A1.1; Am. PSR at ¶ 63; Def's Sent'g Mem. at 6; Gov't Sent'g Mem. at 3.

Pursuant to the Guidelines, an Offense Level of 21 and a Criminal History Category of I results in a Guidelines range of 37–46 months' imprisonment. This range is subject to the statutory maximum of three years, so the Guidelines sentence is 36 months. *See* U.S.S.G. § 5G1.1(a).

Probation recommends a sentence of 30 months' imprisonment; followed by one year of supervised release with three special conditions; and a $100.00 mandatory special assessment. Probation Sent'g Recommendation at 1. The Government recommends a Guidelines sentence of 36 months' imprisonment. Gov't Sent'g Mem. at 1. Defense counsel recommends a sentence of probation. Def. Sent'g Mem. at 20. This Court appreciates the sentencing arguments raised by all parties and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

The parties have not raised arguments regarding unwarranted sentencing disparities in this case. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in this case. 18 U.S.C. § 3663.

### IV. Conclusion

For the reasons set forth above, the Court sentences Defendant to 30 months' imprisonment; 1 year of supervised release with both the standard and special conditions of supervision; and a $100.00 mandatory special assessment. This sentence is sufficient, but not greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's present financial circumstances.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addenda thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

**s/WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 14, 2026
      Brooklyn, New York